UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN HOLSTINE,<br><br>          Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>          Defendant. | No. EDCV 10-0721 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Kathleen Holstine ("Holstine") filed a Complaint on May 20, 2010. Pursuant to 28 U.S.C. § 636(c), the parties filed consents to proceed before the magistrate judge on June 3 and 18, 2010. (Dkt. Nos. 8, 9.) On January 20, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///
///
///
///
///

# I.

## PROCEDURAL BACKGROUND

On January 22, 2007, Holstine filed an application for supplemental security income benefits. Administrative Record ("AR") 9. She alleged a disability onset date of July 30, 2006. *Id.* The application was denied initially and upon reconsideration. *Id.* Holstine requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* On January 15, 2009, the ALJ conducted a hearing at which Holstine and a vocational expert ("VE") testified. AR 21-42. On June 1, 2009, the ALJ issued a decision denying benefits. AR 9-20. On April 9, 2010, the Appeals Council denied Holstine's request for review. AR 1-3. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

///
///
///

2

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found that Holstine has the severe impairments of "right ankle fracture with open reduction internal rotation surgery and mood disorder." AR 11. She has the residual functional capacity ("RFC") to perform medium work and is limited to "lifting 50 pounds occasionally and 25 pounds frequently; sit[ting], stand[ing], and walk[ing] up to six hours each in an eight hour workday, with normal breaks; with no work[ing] on rough or uneven ground; and no ladder climbing or work[ing] at height[s], and no prolonged walking." AR 14. Holstine's work "should be routine and repetitive, entry level, and minimally stressful, with no contact with the general public and only a superficial degree of interpersonal contact with coworkers and supervisors." *Id.* She is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that she could perform, such as housekeeper. AR 18-19.

## C. Treating Physicians' Opinions

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

and making findings." *Id.* at 632 (citations and quotation marks omitted). When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) length of the treatment relationship and frequency of examination;[1] (2) nature and extent of the treatment relationship;[2] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion. *See id.* at 631; 20 C.F.R. § 404.1527(d)(1)-(6). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

### 1. Treating Physician's May 18, 2007 Report

Holstine argues that the ALJ did not consider a treating physician's May 18, 2007 report. She contends the findings in the report "should have been considered and reflected in the RFC."

Contrary to Holstine's contention, the ALJ expressly addressed the May 18, 2007 report. AR 11, 13. The ALJ noted that "[o]n May 18, 2007, Riverside Mental Health reported that [Holstine's] mental status examination (MSE) revealed paranoid and ruminative thoughts, depressed mood, auditory hallucinations, mildly impaired memory, mildly impaired judgment, social withdrawal and depression." AR 11, 215. The "diagnoses were major depression disorder, recurrent and moderate, with psychotic features." *Id.* Holstine's medications were listed as Cymbalta, Topamax, and Seroquel.

---

[1] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[2] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

4

*Id.* According to the May 18, 2007 report, Holstine "was able to interact appropriately with family, strangers, co-workers, and supervisors." AR 13, 215.

### 2.   Dr. Estefan's January 16, 2008 Opinion

Holstine argues that the ALJ improperly rejected the January 16, 2008 opinion of Dr. Estefan, her current treating physician.

The ALJ's RFC assessment limited Holstine to work that is "routine and repetitive, entry level, and minimally stressful, with no contact with the general public and only a superficial degree of interpersonal contact with coworkers and supervisors." AR 14.

The ALJ discussed Dr. Estefan's January 16, 2008 opinion ("Work Capacity Evaluation"). The ALJ noted that Dr. Estefan found Holstine markedly limited in most categories, including her ability to understand and remember short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers, and maintain socially appropriate behavior. AR 17, 312-13. The form filled out by Dr. Estefan defined the term marked to mean the "ability to function in this area is severely limited but not precluded." AR 312. Dr. Estefan opined that her impairments or treatment would cause her to be absent from work three or more times per month. AR 17, 313.

The ALJ gave "little evidentiary weight" to the doctor's opinion for several reasons: (1) the ALJ found no support in the findings for Dr. Estefan's opinion; (2) the report itself did not provide objective clinical or laboratory diagnostic findings to support its conclusions and gave no diagnosis, mental status examinations or test results, or Global Assessment of Functioning score to support its conclusions; (3) the report was egregiously accommodative and indulgent; and (4) most clinical findings from other medical sources in the record were unremarkable. AR 17-18, 312-13.

An ALJ may discount a treating physician's opinion that is not supported by the treatment notes. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). A treating physician's opinion may be discounted if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In addition, an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. An ALJ may discount a check-the-box report that does not explain the basis of its conclusions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly rejected treating physician's conclusory check-list report).

The ALJ's first reason is supported by substantial evidence. In October 2007, Dr. Estefan found no evidence of psychosis – a category which included delusions, hallucinations, or disorganized/ incoherent speech – mood or anxiety issues. AR 341. Holstine had normal speech and motor activity, good eye contact, and responsive interactions. AR 343. She had good concentration, her mood was euthymic and her affect was appropriate. *Id.* She had no delusions or hallucinations, her general fund of knowledge was average, and she had good insight and judgment. *Id.* Dr. Estefan's progress note on that date reports Holstine stated she "still feels paranoid" and "hear[s] voices," but that she is "sleeping well," and "goes to church." AR 326. Dr. Estefan found her "currently stable" and "seems to have good insight, reasonable judgement [sic]." *Id.* In December 2007, Holstine's appearance, mood, affect, attention/concentration and speech were appropriate. AR 324. Holstine reported feeling "paranoid" and "hears voices making comments." *Id.* She smelled of alcohol. *Id.* Dr. Estefan's progress note on January 22, 2008 reports that "sleeps well," "feels paranoid," "still hears voices" and has "occasional periods of depression." AR 319. Dr. Estefan found that her appearance, mood, affect, and attention/concentration were appropriate. *Id.*

Having found that Dr. Estefan's treating records did not support his conclusions, the ALJ correctly noted that Dr. Estefan's Work Capacity Evaluation form did not separately provide any objective or diagnostic findings to support its conclusions. AR 312-13. The ALJ could reasonably infer from the record that the Work Capacity Evaluation form was accommodative to Holstine's subjective reports. For the reasons discussed below, the ALJ's finding that Holstine was not entirely credible is supported by substantial evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (ALJ may properly reject treating physician's opinion based on subjective complaints when ALJ properly discounts claimant's credibility).

Finally, an ALJ may rely on inconsistency with the medical evidence as a whole as a basis for discounting the treating physician's opinion. *Orn*, 495 F.3d at 631. The ALJ determined that most clinical findings regarding Holstine's mental impairments were unremarkable and did not corroborate the degree of her complaints. AR 18. The ALJ reviewed treatment records during the period August 2006 through January 2008, including those of Dr. Estefan. AR 15-16, 228, 242, 236, 319, 324, 336, 343-44. The ALJ also reviewed and summarized the report of the examining physician Dr. Abejuela dated May 23, 2007. AR 13, 16, 186-92. Dr. Abejuela found that her reasoning and comprehension are intact and commensurate with her educational level (an AA degree). AR 188. Her thought content was logical and coherent, and she was able to recall three out of three objects after three and five minutes. AR 189. Although Holstine reported hearing voices, she did not appear to be responding to internal stimuli and did not exhibit any bizarre delusions, paranoia, or psychotic symptoms. AR 189, 191. Dr. Abejuela diagnosed mild depression and mild anxiety. AR 191. Dr. Abejuela found mild impairment to her concentration, persistence and pace, and no impairment in her ability to understand, remember and carry out simple instructions. *Id.* He found mild impairment in her ability to understand, remember and carry out complex instructions, respond to co-workers, supervisors and the public, and deal with changes in a routine work setting. *Id.* Her prognosis was fair to good. AR 192.

The ALJ provided specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Estefan's opinion. The ALJ did not err.

### D. Auditory Hallucinations

Holstine argues the ALJ did not properly consider her auditory hallucinations. She contends the RFC and hypothetical questions to the VE should have taken her auditory hallucinations into account.

In assessing the RFC, the ALJ must "consider the limiting effects of all [Holstine's] impairment(s), even those that are not severe." 20 C.F.R. §§ 416.945(e), 404.1523. However, the RFC need only incorporate limitations that the ALJ found to be supported by the record. *See Osenbrock v. Apfel*, 240 F.3d 1157,1164-65 (9th Cir. 2001). Similarly, the ALJ's hypothetical questions to the VE must include "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217.

The ALJ considered Holstine's complaints of auditory hallucinations. AR 11, 14-16, 18. At the hearing, Holstine testified that she still hears voices, although not to the same extent as when they first started. As the ALJ noted, Holstine testified the voices tell her when she is doing something wrong. AR 14, 30.

The ALJ found that the voices did not limit her ability to work within his RFC assessment. The ALJ noted that Holstine's mental status examinations did not reveal significant mental limitations notwithstanding her report that she heard voices. AR 15-16, 226-228 (thought content within conventional boundaries; good comprehension; full, clear, continuous awareness of environment and present circumstances; cognition intact; demeanor is composed, responsive, cooperative, mildly worried; speech is fluent, coherent, goal-directed; no lability or incongruity), 242 (Holstine reports hearing "voices commenting on her behavior"; feels "okay"; getting out more socially with neighbors; energy level is fair; assessed mood and affect brighter), 236 (alert, fully oriented, composed, calm, clear and goal-oriented speech), 319 (appropriate appearance, mood, affect, attention/concentration, stable notwithstanding reports of hearing voices), 324

(she "hears voices making comments"; doing well, appropriate appearance, mood, affect, attention/concentration, speech), 336 (hears voices commenting on her activities when she goes outside; appropriate mood, affect, attention/concentration; good response to medication); 343 (normal speech and motor activity; good eye contact; responsive interactions; good concentration; no delusions or hallucinations; good insight and judgment). In addition, the ALJ noted that Dr. Abejuela, an examining physician, wrote that Holstine hears voices "off and on but she is unable to elaborate." AR 187. She did not appear to be responding to internal stimuli and did not exhibit bizarre delusions or paranoia. AR 16, 189. As discussed above, Dr. Abejuela's assessment was consistent with the ALJ's RFC. The ALJ properly discounted Dr. Estefan's opinion and Holstine's credibility for reasons discussed in this opinion. The ALJ did not err.

### E.  Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found Holstine's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 14.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ made no finding of malingering. He found that Holstine's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." AR 14. "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citation and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation quotation marks omitted). In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (*e.g.*, movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88-13[3]) (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas,* 278 F.3d at 958-59.

"If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.* at 959 (citing *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

The ALJ discounted Holstine's credibility based on at least four factors: (1) lack of objective evidence in the record to support Holstine's complaints; (2) conservative

---

[3] "Social Security Rulings do not have the force of law. Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

treatment/effective medication; (3) active lifestyle; and (4) missed appointments. AR 16-17.

### 1. Objective Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ noted that the medical evidence did not support the degree of Holstine's subjective claims for the reasons discussed above. AR 16, 226, 236, 319, 324, 336, 343.

### 2. Conservative Treatment/Effective Medication

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). The ALJ found that Holstine's complaints had been treated conservatively. AR 16. Holstine primarily took Cymbalta and Seroquel for her mental complaints. AR 16, 207-57, 319-44. The ALJ also noted Holstine reported the medications had made her feel calmer. AR 16, 215, 221, 233, 240-41, 255, 319, 324. Impairments that can be controlled effectively with medication are not considered disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

### 3. Active Lifestyle

The ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. The ALJ noted that Holstine described "an active life that includes an ability to take medications, watch television, read, use the computer, shower, move clothes from the washer to the dryer, fold laundry, wash dishes, go grocery shopping, [and] handle her finances." AR 16, 132-39. He found that Holstine's active lifestyle was inconsistent with limitations that would preclude sustained work activity.

///

### 4. Missed Appointments

The ALJ may consider a claimant's unexplained failure to seek treatment when weighing credibility. *Thomas,* 278 F.3d at 958-59. The ALJ noted Holstine's failure to attend her medical appointments was not consistent with disabling levels of pain. AR 17. The ALJ recognized that Holstine missed appointments in October 2006 and March 2007, and was advised in May 2007 to keep her appointments. AR 17, 215, 235, 246.

Based on the record as a whole, the ALJ provided "specific, clear and convincing reasons" for declining to fully credit Holstine's testimony, *see Lingenfelter*, 504 F.3d at 1036, and his credibility finding is supported by substantial evidence. The Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

### F. <u>Mild Difficulties with Concentration, Persistence, or Pace</u>

Holstine argues the ALJ did not properly consider her "mild difficulties with concentration, persistence, or pace," as found by examining physician Dr. Abejuela. However, the ALJ found that Holstine had mild difficulties with regard to concentration, persistence or pace. AR 13; *see* 20 C.F.R. §§ 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas [activities of daily living; social functioning; and concentration, persistence, or pace] as 'none' or 'mild' and 'none' in the fourth area [episodes of decompensation/deterioration], we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."); 416.920a(d)(1) (same). Consistent with Dr. Abejuela's opinion, the ALJ determined that Holstine's work should be routine and repetitive, entry level, and minimally stressful, with no contact with the general public and only a superficial degree of interpersonal contact with coworkers and supervisors. AR 14, 191. The ALJ's RFC determination adequately reflects the mental restrictions supported by the record. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace

where the assessment is consistent with restrictions identified in the medical testimony."). The ALJ did not err.

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 5, 2011

ALICIA G. ROSENBERG
United States Magistrate Judge